JONATHAN SHUB (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
(215) 564-2300 tel; (215) 851-8029 fax
jshub@seegerweiss.com

*[ADDITIONAL COUNSEL ON SIGNATURE PAGE]*

Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAM HOVSEPIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE, INC. and DOES 1-10 inclusive,<br><br>Defendant. | Case No. 5:08-cv-5788 JF<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Aram Hovsepian, individually and on behalf of the class described below, by his attorneys, makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff and counsel, which are based on personal knowledge.

## I.    OVERVIEW OF THE ACTION

1.    Plaintiff brings this lawsuit as a proposed class action on behalf of himself and other Apple. Inc.'s ("Apple") iMac purchasers as the iMac contains a latent defect that manifests in the form of (unwanted) vertical lines on iMac display screens which degrade image quality and frequently render the screen

Dockets.Justia.com

image all but unviewable (the "Defect").[1]

2. On information and belief, Apple knew, or was reckless in not knowing, at or before the time it sold its first iMac, that they contained the Defect and that the Defect would lead to premature failure of the iMac's display screen. Apple had sole and exclusive possession of this knowledge and information, which is detailed more fully below.

3. At all times, Apple concealed from and/or failed to disclose to Plaintiff, the Class, and everyone in the chain of distribution, the Defect in the iMac display screens, and failed to removed the iMacs from the marketplace or take adequate remedial action.

4. The iMac is an iconic computer, valued by consumers for its high quality and dependability. Apple's advertising is replete with representations of this premium brand image, and Apple is able to charge a higher price for its computers as a result. In fact, on Apple's web site, there is a section entitled "Frequently Asked Questions" and one of the questions Apple considers to be "Frequently Asked" is "Why Pay More For a Mac?" The degradation of the screen image through the appearance of vertical lines is not one of the reasons Apple expects consumers to pay more for its Mac products.

5. The display screen of the iMac is unique in that it is integrated into the chassis of the computer, and not a separate component. The traditional desktop computer has a case or "tower" that contains the motherboard, processor, and storage drives. A computer monitor is plugged in externally through a cable to the

---

[1] The iMac is Apple's version of a desktop computer.

tower, allowing the computer images to be displayed.  In the traditional desktop computer, if the screen fails, the monitor can be sent out for repair by itself – there is no need to send the entire computer, including the tower, in for repair if just the screen is defective.  Thus, the user can get a new monitor or use a backup monitor while the screen is being repaired.

6. The iMac is different.  The motherboard, processor, and storage drives are integrated into the chassis that also holds the screen.  In fact, iMac's resemble a thick computer monitor when viewed from the side.  The only cables connected to the iMac are one power cable, and the mouse and keyboard wires.  The consumer cannot simply unhook the display screen from the rest of the computer to have it repaired.  In order to get the display screen repaired, the consumer has to bring in the entire computer, and live without the computer entirely while it is being repaired.

7. Apple consumers tend to be sophisticated computer purchasers, and when they buy an iMac, they are well aware that repairing a screen failure will require the entire computer to be brought in for service.  The iMac consumer thus has a much higher expectation of screen reliability.

8. The expectations of many consumers, fostered by Apple's advertising barrage representing screen image quality, have not been met because, unbeknownst to Plaintiff and Class, and undisclosed by Apple, the screen display for iMacs fail at an unusually high rate in excess of Apple's own internal standards, as well as industry standards.

9. Plaintiff is not an isolated, disgruntled consumer.  Plaintiff is but one of thousands of iMac owners who have suffered this problem, as the numerous

consumer complaints on Apple forums and consumer complaint websites demonstrate. Apple is well aware of the problems with the iMac screens, as it has received thousands complaints arising from this defect. Apple is also acutely aware of what is being said about the screen problems on Apple forums and consumer complaint websites as Apple regularly monitors such postings. Apple nonetheless has continued to market the iMac with a significant focus on screen quality, and it has not notified consumers or warned of the propensity for vertical line screen failure.

10. As a result of Apple's misconduct, consumers have purchased iMacs – and paid a premium to do so--only to have them manifest the latent defect and develop unwanted vertical lines on the display screen; and numerous consumers have made warranty claims arising from vertical lines which have been denied as out of warranty.

11. Apple's response to this problem belies Apple's carefully crafted image for quality and consumer care: Apple will not fix the problem if it does not manifest during the one year manufacturer's warranty, and it has not extended the warranty for this screen problem. This is a particularly problematic position given that the screen defect manifests itself within the reasonable expected life cycle of the computer, which for most users is at least three years. Plaintiff recognizes that screens, normally operated and maintained, will eventually fail. But such an expected life cycle failure does not manifest itself with the vertical line symptom, and the number of failures and the relatively early failure rate indicate that this is not a problem that is a foreseeable result of typical product life cycle degeneration.

12. Apple's conduct: (a) violates California law, and/or alternatively, state

consumer protection statutes as enumerated below, and (b) constitutes unjust

enrichment, as alleged more fully below; and, (c) makes injunctive relief

appropriate pursuant to 28 U.S.C. § 2201.

## II.    JURISDICTION AND VENUE

13.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a

class action invo1ving more than 100 class members.  Members of the classes are

citizens of a state different from defendant, and the amount in controversy, in the

aggregate, exceeds the sum of $5 million exclusive of interest and costs.

14.    Defendant, is a California corporation, has its principal place of

business in Cupertino, California, transacts business in this District, has subjected

itself to this Court's jurisdiction through such activity, and a substantial part of the

events and omissions giving rise to the claim occurred in this District.

Accordingly, venue is proper in this District under 28 U.S.C. § 1391.

## III.    PARTIES

15.    Plaintiff Aram Hovsepian is a natural person and resident of Sunny

Isles Beach, Florida, who purchased an iMac in October 2006, and in March 2008,

had vertical lines begin to appear on his display screen.

16.    As stated, defendant Apple is a California corporation with its

principal place of business in Cupertino, California.

17.    The true names and capacities, whether individual, corporate,

associate, representative or otherwise, of the defendants identified herein as Does

1-10 inclusive are unknown to Plaintiff, who therefore sues these defendants by

said fictitious names.  Plaintiff will amend this complaint to allege the true names

and capacities of Does 1-10 when they have been ascertained.  Does 1-10 are in

some manner legally responsible for the wrongs and injuries alleged in this complaint and all allegations against Apple are alleged against Does 1-10.

18. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time, and Plaintiff therefore sue said Defendants by such fictitious names. Plaintiff alleges, on information and belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiff will seek leave of Court to amend this Complaint when the names of said DOE defendants have been ascertained

## IV. FACTS

19. This case arises out of Apple's breach of its duty to disclose material facts regarding its knowledge of the risk that vertical lines would appear prematurely on iMac display screens, as well as its misrepresentations of the product quality and screen image expectations.

20. Vertical lines on LCD screens are the result of a bad transistor or connection on the back of the screen, a manufacturing and/or design defect.

### A. APPLE OMITTED CRITICAL INFORMATION INFORMING CONSUMERS OF THE PROPENSITY OF IMAC SCREENS TO DEVELOP VERTICAL LINES WELL BEFORE THE TYPICAL PRODUCT LIFE EXPECTATION PASSES.

21. Consumers expect LCD screen display, such as the iMac screen display, to last at least three years under normal usage. Many current studies suggest that an average LCD screen should last at least 5 years of normal usage without significant screen degradation.

22. Typical LCD screen degradation comes from the dimming of the

screen's backlight.  Under no circumstances is it expected by consumers or the computer industry for LCD displays to begin to display vertical lines at any point of the LCD's life cycle.

23.     Apple knows that a very high percentage of iMac display screens will develop the vertical line problem within 2-3 years of first use.  Apple is exclusively aware of this because only Apple has all the data that reveals the depth of the problem.  Apple does not make public the number of complaints it receives, nor does it disclose the number of warranty claims or repair orders it receives, let alone reveal that information by part repaired or replaced or the problem with those parts repaired or replaced.

24.     Apple also has knowledge of what is being said about iMacs on Apple-sponsored and third party forums discussing iMac performance.  Computer manufacturers such as Apple routinely monitor such websites because it gives Apple valuable information about product performance and consumer perception.

25.     There have been an inordinate number of postings about the vertical line problem on such consumer forums.  It appears that the problem manifests itself most frequently between 14 and 24 months after first use.  The problem also gets worse over time.  The vertical lines may begin pencil thin but ultimately expand to one inch in width or more.

/ / /

/ / /

/ / /



The vertical lines obliterate any screen image that is located underneath the vertical lines. The vertical lines are not opaque.

26. Plaintiff's experience is by no means isolated or unique. In fact, for example, as of April 17, 2009, more than 2,300 iMac consumers have visited the

website, http://www.petitiononline.com, and made the following demand on Apple:

> "We, the undersigned, request that Apple Inc. officially acknowledge and address the defect in their LCD Displays. The defect causes vertical lines (cyan/yellow/pink) to appear cutting through the screen and multiplying as time goes by. Unfortunately, the problem starts to appear right after the end of the one year warranty. This problem has been filling up the Apple's online discussion forum and with no possible solution. We are the loyal Apple fans and would love to see Apple show its appreciation by stepping up to this issue." *See* http://www.petitiononline.com/maclines/petition.html.

27.     The vertical line issue is a defect and is not the inevitable consequence of aging computer screen, such as the dimming of the screen's backlight.  Vertical lines should never appear on the screen.  Apple, the designer of the screen and the components that interact with the screen, has exclusive knowledge of the design or equipment characteristics that cause the defect.

28.     Apple has failed to warn consumers about material facts regarding the Defect with iMac display screens, and failed to warn about the risk that iMac display screens would develop unwanted vertical lines.  Instead Apple has continued to sell iMacs to unsuspecting consumers, all the while aware that there is a very strong likelihood that the vertical line problem will manifest, and that such manifestation is likely to occur just after the expiration of the Apple warranty of one year.

29.     The existence of a defect which causes a significant likelihood that

iMac screens will develop vertical lines well within the expected life-cycle of the iMac is material fact to iMac purchasers. Many consumers would not pay the premium to buy an iMac if they knew the screen would malfunction so soon, and at a minimum many would have purchased the Apple extended warranty if they had been warned in advance. The three year extended AppleCare warranty currently costs $169, compared to the cost to repair the screen of nearly $800. To put the screen repair cost in context, a brand new 20 inch iMac currently costs $1199 – a price which includes the entire computer: screen, motherboard, processor, storage drives, and software. Rational and reasonable consumers would thus consider the high likelihood of paying for an $800 repair of $1200 to $2000 computer to be material, and Apple continues to omit advising consumers of this risk, even though Apple is acutely aware of it.

30. Compounding the material nature of the omission is the "all-in-one" nature of the iMac, which necessitates submitting the entire computer to Apple for servicing, thus depriving the iMac owner of the use of their entire computer during the duration of the service process. The integrated nature of the iMac makes the vertical screen line defect omission material to the rational and reasonable consumer.

31. Apple has failed to take corrective action with regard to the Defect. Instead, Apple has responded by uniformly denying, on its website and in its retail stores, customer complaints and has sought to "run out the clock" on the warranties that accompanied the iMac.

///

## V.    CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action for equitable, injunctive and declaratory relief, as well as monetary relief pursuant to Rule 23 on behalf of the following class: All persons and entities in the United States who purchased, not for resale, an iMac computer.  Excluded from the Class are Apple; any entity in which it has a controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; and members of the federal judiciary.

33.    The members of the Classes are readily ascertainable but are so numerous that joinder is impracticable. The exact number and names of the members of the Class are presently unknown to Plaintiff, but can be ascertained readily through appropriate discovery.  Plaintiff believes that there are thousands of members of the Class whose names and addresses may be readily discovered upon examination of the records in the custody and control of Apple.

34.    There are questions of law and fact common to the Class.  Defendant pursued a common course of conduct toward the Class as alleged.  This action arises out of a common nucleus of operative facts.  Common questions include but are not limited to:

        (a)    Whether Apple iMac display screens have a latent defect;

        (b)    Whether Apple iMac display screens have a latent defect that is common to Apple iMacs;

        (c)    Whether the latent defect manifests as vertical lines that appear on iMac display screens;

        (d)    Whether Apple has denied warranty claims arising from

the latent defect when that defect has manifested;

(d)      Whether Defendant's conduct constitutes deceptive, unfair and/or oppressive conduct as defined under the California Unfair Business Practices Act (CUBPA) (Cal. Bus. & Prof. Code §17200 *et seq.*),

(e)      Whether Defendant was unjustly enriched by its scheme;

(e)      Whether Plaintiff and Class have been damaged, and if so, in what amount?

35.      Plaintiff's claim is typical of the claims of other members of the Class. Plaintiff purchased an iMac from Defendant.

36.      Plaintiff will fairly and adequately represent and protect the interests of the Class, and common issues of law and fact predominate.

37.      Plaintiff has retained counsel competent and experienced in prosecuting complex consumer class actions.

38.      Class certification is appropriate because Defendant has acted, or refused to act, on grounds generally applicable to the Class, making class-wide equitable, injunctive, declaratory and monetary relief appropriate. In addition, the prosecution of separate actions by or against individual members of the Class would create a risk of incompatible standards of conduct for Defendant and inconsistent or varying adjudications for all parties. A class action is superior to other available methods for the fair and efficient adjudication of this action.

## VI.    CALIFORNIA'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS

39.      California's substantive laws apply to the proposed Nationwide Class,

as defined herein, and Plaintiff properly brings this Complaint in this District.

40.     California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

41.     Defendant's United States headquarters and principal place of business is located in California.  Defendant also owns property and conducts substantial business in California, and therefore California has an interest in regulating Defendant's conduct under its laws.  Defendant's decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

42.     California is also the State from which Defendant's alleged misconduct emanated.  This conduct similarly injured and affected all Plaintiffs and Class members residing in the United States.  For instance, Defendant's marketing efforts relating to personal computer sales were created and orchestrated from its headquarters in California.  More specifically, California has the following significant contacts to the claims of Plaintiffs and Class members:

> (a)     California serves as the headquarters for Apple's marketing and sales in the United States and provides all sales support;

(b)     Upon information and belief, all corporate decisions regarding the iMac, iMac screens and iMac screen warranty claims were directed by, or emanated from, Apple representatives working in California or directly reporting to superiors situated in California.

43.     The application of California laws to the Nationwide Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class, and California has a greater interest in applying its laws here than any other interested state.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Violation of the California Consumers Legal Remedies Act)

44.     Plaintiff repeats and realleges the allegations of the prior paragraphs, as if fully set forth herein.

45.     At all times relevant hereto, there was in full force and effect the California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750.[2]

46.     Plaintiff and many other Class members are consumers within the meaning of Cal. Civ. Code § 1761(d).

47.     Apple violated the CLRA's proscription against the concealment of

---

[2]     If the California act does not apply to non-California class members, then the consumer fraud claims of absent, non-California Class members are brought under the consumer protection statute(s) of their respective states. *See e.g.*, Fla. Stat. Ann. § 501.201 *et seq.* (Florida); 815 ILCS § 505/1 *et seq.* (Illinois); Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-1 *et seq.* (North Carolina); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Wash. Rev. Code § 19.86.010 *et seq.* (Washington)

the characteristics, use, benefit, or quality of goods by actively concealing at all times from Plaintiff, Class members, and everyone in the chain of distribution in all of its broadly disseminated warranties, marketing and advertising, the material fact that the iMac contains a latent defect in the form of (unwanted) vertical lines on iMac display screens which degrade image quality and frequently render the screen image all but unviewable. Specifically, Apple's active concealment of material facts violated:  (a) § 1770 (a)(5)'s proscription against representing that goods have uses or characteristics they do not have;  and (b) § 1770 (a)(7)'s proscription against representing that goods are of  particular standard or quality when they are of another.

48.     Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

49.     Apple had a duty to disclose material facts regarding the Defect alleged here pursuant to the second and third prongs:

> a.    Apple had and has a duty to disclose material facts about the Defect because Apple had exclusive knowledge of the Defect at the time of sale. The Defect, while obvious to an expert engineer, is latent and not something that a Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

b. Apple had and has a duty to disclose material facts about the Defect because Apple undertook active steps to conceal it. There is nothing in Apple's advertising or marketing materials that discloses the truth about the Defect, despite ample evidence that Apple is aware of the problem by virtue of, nothing else, thousands and thousands of consumer complaints on the Internet and on Apple's own web site. Apple has at all times denied the existence of any Defect in the iMac.

50. Had Plaintiff known the concealed material facts, he would have purchased a different computer.

51. Apple's concealment of material facts was designed to induce Plaintiff and the members of the Class to purchase the iMac.

52. Plaintiff and the class suffered actual damages as a direct and proximate result of Apple's action, concealment and/or omissions in violation of the CLRA, as evidenced by their decision to purchase the iMac. Had they known their true character and quality, Plaintiff and the Class Members would not have purchased them.

53. Plaintiff, on behalf of himself and for all those similarly situated, demands judgment against Apple for the injunctive relief in the form of restitution and/or proportional disgorgement of funds paid to Apple to purchase the iMAc or repair and/or replace the defective screens, an injunction requiring Apple to adequately repair the Defect or replace the iMacs free of charge, and an award of attorney fees pursuant to Civil Code §1780(d).

54. In accordance with §1782(a) of the CLRA,  on January 16, 2009,

Plaintiff's counsel, on behalf of Plaintiff, served Apple, by certified mail, with notice of its alleged violations of the CLRA. Apple has not responded as of the filing of this Complaint.

55.     In accordance with CLRA §1782(b), Plaintiff is entitled, under CLRA §1780, to recover or obtain any of the following relief for Apple's violation of CLRA §§1770(a)(5) and (a)(7):

- actual damages under Civ. Code §1780(a)(1);
- punitive damages under Civ. Code §1780(a)(4);
- attorneys' fees and costs under Civ. Code §1780(d); and
- any other relief the Court deems proper under Civ. Code §1780(a)(5).

## SECOND CAUSE OF ACTION
**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et. seq.**
**"Unlawful," "Unfair" and "Fraudulent" Business Acts or Practices**

56.     Plaintiff repeats and realleges the allegations of the prior paragraphs, as if fully set forth herein.

57.     Plaintiff brings this cause of action on behalf of himself, on behalf of the Class Members, and in his capacity as private attorney generals against Defendant for its unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business & Professions Code section 17200 *et seq.* ("UCL") which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

58.     Plaintiff asserts these claims as representatives of an aggrieved group and as private attorneys general on behalf of the general public and other persons

who have expended funds that the Defendant should be required to pay or reimburse under the restitutionary remedy provided by California Business & Professions Code §§ 17200, *et seq.*.

59.     The instant claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices.  Plaintiff and Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

60.     The California Business & Professions Code §§ 17200, *et seq* prohibits acts of "unfair competition."  As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices;" (b) "unfair fraudulent business acts or practices;" and (c) "unfair, deceptive or misleading advertising."

61.     Apple violated the Unfair Business Practices Act, Business and Professions Code §§ *et. seq.*, by engaging in conduct that violated each of the three prongs identified by the statute and outlined in Paragraph 60 above.

62.     Apple committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions code §17200, *et. seq.*, when it violated the CLRA as alleged in Paragraphs 44-54 above.

63.     Apple committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions Code §17200, *et. seq.*, when it violated the common law prohibition against fraudulent concealment/nondisclosures as alleged in Paragraphs 72-85  below.

64.     Apple committed *unfair and fraudulent* business acts and practices in

violation of the Unfair Business Practices Act, Business and Professions Code §§17200 and 17500, *et. seq.*, when it concealed and/or failed to disclose the true defective nature of the Display Screens in its marketing, advertising and other broadly disseminated representations in a manner likely to deceive the public.

65. Apple committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§17200 and 17500, *et. seq.*, when it refused to repair the Defect free of charge.

66. Apple's deceptive practices were specifically designed to induce Plaintiff and members of the Class to purchase Affected Computers.

67. Apple's deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

68. To this day, Apple continues to violate the Unfair Business Practices Act by continuing to actively conceal the defective nature of the Display Screens and by charging consumers for repairs necessitated by the Defect.

69. As a direct and proximate cause of Apple's violation of the Unfair Business Practices Act, Plaintiff and the Class have suffered harm in that they owned the defective Screen Display and by charging consumers for repairs necessitated by the Defect.

70. As a direct and proximate result of Apple's violation of the Business and Professions Code §17200, *et. seq.*, Apple has been unjustly enriched and should be required to make restitution to Plaintiff and the Class or disgorge its ill-gotten profits pursuant to Business and Professions Code §17203.

71. Plaintiff, on behalf of himself and for all other similarly situated, demands judgment against Apple for injunctive relief in the form of restitution,

and/or disgorgement of funds paid to Apple to purchase the iMac or to repair and replace the defective Screen Display, or injunctive relief in the form of repairing and replacing the defective Screen Display on Plaintiff's and Class members' iMacs, as well as attorney's fees, costs and interest.

### THIRD CAUSE OF ACTION
**Fraudulent Omissions**

72.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

73.     Apple knew, or was reckless in not knowing, that the Screen Displays are defective in that they are substantially certain to fail well in advance of their expected useful life.

74.     Apple fraudulently concealed from and/or intentionally failed to disclose to Plaintiff, the Class, and all others in the chain of distribution (*e.g.*, concealments and omissions in Apple's communications with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on to Plaintiff and the Class) the true nature of the defective Screen Displays.

75.     Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

76.     Apple had a duty to disclose material facts regarding the Defect alleged here pursuant the second and third prongs:

a. Apple had and has a duty to disclose material facts about the Defect because Apple had exclusive knowledge of the Defect at the time of sale. The Defect, while obvious to an expert engineer, is latent and not something that a Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

b. Apple had and has a duty to disclose material facts about the Defect because Apple undertook active steps to conceal it. There is nothing in Apple's advertising or marketing materials that discloses the truth about the Defect, despite ample evidence that Apple is aware of the problem by virtue of, nothing else, thousands and thousands of consumer complaints on the Internet and on Apple's own web site. Apple has at all times denied the existence of any Defect in the iMac.

77. The facts concealed and/or not disclosed by Apple to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase the iMac.

78. Apple intentionally concealed and/or failed to disclose the problems with the Screen Displays for the purpose of inducing Plaintiff and the Class to act thereon.

79. Plaintiff and the Class justifiably acted or relied upon to their detriment the concealed and/or non-disclosed facts as evidenced by their purchase of the iMac.

80. Had Plaintiff and the Class known of the Defect, they would not have

purchased their iMac.

81.     As a direct and proximate cause of Apple's misconduct, Plaintiff and Class members have suffered actual damages in that they bought and owned Apple Screen Displays that contain an inherent defect and that prematurely failed or are substantially certain to prematurely fail, and will be required to incur costs to repair and/or replace the Screen Display or the computers as a whole.

82.     Apple's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

83.     Apple has acted with "malice" as that term is defined in Civ. Code §3294(c)(1) by engaging in conduct that was and is intended by Apple to cause injury to the Plaintiff and the Class.

84.     Apple has committed "fraud" as that term is defined in Civ. Code §3294(c)(3)  through its concealment of material facts known to Apple with the intent to cause injury to the Plaintiff and the Class.

85.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Apple for actual and punitive damages in accordance with Civ. Code §3294(a) for himself and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment (alternative claim))

86.     Plaintiff repeats and realleges the allegations of the prior paragraphs, as if fully set forth herein.

87.     Plaintiff and the Class have conferred benefits on Defendant by paying the purchase price for iMacs and/or by paying for repairs to iMacs to

correct vertical line problems in the display screens.

88.   Defendant knowingly and willingly accepted these monetary benefits from Plaintiff and the Class.

89.   Under these circumstances, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and the Class.

90.   Defendant has been unjustly enriched at the expense of and detriment to Plaintiff and the Class by wrongfully collecting money to which Defendant, in equity, is not entitled.

91.   Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

92.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiffs and the Classes.

93.   Plaintiffs and the Classes have no adequate remedy at law.

94.   Plaintiffs seek to obtain a pecuniary benefit for the Classes in the form of all reimbursement, restitution and disgorgement from Defendant.  Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Classes, and will seek an award of such fees and expenses at the appropriate time.

95.   As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

WHEREFORE, Plaintiff, individually and on behalf of the Classes of

persons described herein, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class defined herein;

B.  Designating Plaintiff as representative of the Class and his counsel as Class counsel;

C.  Entering judgment in favor of Plaintiff and the Class and against Defendant;

D.  Awarding Plaintiff and members of the Class their individual damages and attorneys' fees and allowing costs, including interest thereon; and/or restitution and equitable relief; and

E.  Granting such further relief as the Court deems just.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

96.  Plaintiff repeats and realleges the allegations of the prior paragraphs, as if fully set forth herein.

97.  There is an actual controversy between Apple and the Class concerning the validity of the time limitations in the warranty on iMac screen displays showing vertical lines

98.  Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

99.  Apple has wrongfully denied warranty claims as untimely or based on other grounds despite the root cause of the vertical lines being a manufacturing

and/or design defect as described herein.

100. Accordingly, Plaintiff seeks a declaration that the Apple iMac screen display warranties regarding the one year time limitation on manufacturing defects in material or workmanship are void, invalid and not enforceable.

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons described herein, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and his counsel as Class counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendant;

D. Awarding Plaintiff and members of the Class their individual damages and attorneys' fees and allowing costs, including interest thereon; and/or restitution and equitable relief;

E. Compelling Defendant to establish a program to replace and repair defective iMac displays;

F. Compelling Defendant to establish a program to reimburse its warranty claims previously denied or paid in part, reimburse iMac owners who have had to pay to repair and/or replace defective iMac displays; and

G. Granting such further relief as the Court deems just.

# VIII.  JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  April 17, 2009

Respectfully Submitted,
ARAM HOVSEPIAN


By: /s/ Jonathan Shub
JONATHAN SHUB (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania  19102
(215) 564-2300


## ADDITIONAL COUNSEL

David R. Buchanan
**SEEGER WEISS LLP**
One Williams Street
New York, NY 10004
(212) 584-0700

Eric D. Freed (SBN 164526)
George K. Lang
Michael J. Lotus
**FREED & WEISS LLC**
111 W. Washington St., Suite 1331
Chicago, Illinois 60602
(312) 220-0000


Michael J. Boni
**BONI & ZACK, LLC**
16 St. Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-200

Michael D. Donovan
**DONOVAN SEARLES, LLC**
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
(215) 732-6067

Richard J. Burke
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101
(314) 621-8647